**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3123-23

THE ESTATES AT LAYTON'S
LAKES HOMEOWNERS
ASSOCIATION, INC.,

     Plaintiff-Appellant,

v.

BONNIE WATSON and
LORRAINE BOCK,

     Defendants-Respondents.

_____

         Submitted April 30, 2025 – Decided May 7, 2025

         Before Judges Mayer and Puglisi.

         On appeal from the Superior Court of New Jersey, Chancery Division, Salem County, Docket No. C-000017-23.

         Cutolo Barros, LLC, attorneys for appellant (Jennifer M. Kurtz, on the briefs).

         Masten and Ray, attorneys for respondents (Michael J. Napuda, on the brief).

PER CURIAM

Plaintiff The Estates at Layton's Lakes Homeowner's Association, Inc. (Association) appeals from an April 12, 2024 order denying its motion for summary judgment and granting summary judgment to defendants Bonnie Watson and Lorraine Bock. We affirm.

The Association is a non-profit corporation governing a residential community known as the Estates at Layton's Lake (Estates) in Carneys Point Township (Township). Defendants own a home on a half-acre property in the Estates (Property). The Property is subject to the Association's governing documents.

On July 16, 2008, the Association recorded a Declaration of Covenants, Conditions, and Restrictions (Declaration) applicable to properties within the Estates, including the Property. The Declaration included a plan (Plan) showing the Property had a minimum thirty-foot setback on the front, back, and one side, and a fifteen-foot setback on the other side.

Article VIII, Section 8.1 of the Declaration contains "Protective Covenants," enumerating "Restrictions on the Use of Lots" within the Estates. Section 8.1(c) states:

> No fence, wall, hedge, mass planting or similar continuous structure shall be erected or maintained in front yard of the main house structure. If the Owner elects to erect a fence, wall, hedge or mass planting to

the rear or side of the main house structure, such fence, wall, hedge or mass planting must (i) be a maximum of four (4) feet in height or such lesser amount required by municipal ordinance(s); (ii) be approved by the Architectural Control Committee, (iii) not be in conflict with any municipal ordinance(s); (iv) with respect to fences, be constructed of wood, white PVC or black aluminum tubing; and, (v) be of an open style such as a split rail or estate fence. A wood fence may be kept in a natural, unpainted condition, or may be treated with a clear waterproofing material. Owners shall be allowed to affix open metal screening to a permitted fence.

Under Section 8.1(dd) of the Declaration:

No accessory building, shed, shack, porch, or other similar type of structure or exterior improvement, whether temporary or permanent, shall be constructed, erected, placed, or maintained on any Lot for use other than by the Owner or his immediate family (i.e., husband, wife, son(s), or daughter(s)). In addition, no accessory building, shed, shack, porch, or other similar type of structure or exterior improvement, whether temporary or permanent, shall be located on any Lot closer to the front, side and rear property boundaries than the minimum setbacks shown on the Plan, or the minimum setback as required by ordinance, whichever, is more restrictive.

In November 2022, defendants sought to erect a fence on the Property and obtained a zoning permit from the Township for a "[f]ence [forty-eight] inches h[igh] in [the] front, side and rear yards; no more than [fifty percent] solid in [the] front yard[;] [and no] closer than [four] inches to any property line." The Township's zoning ordinance governing fences, Section 94-12, stated: "No fence

3

shall be erected less than four inches from the property line without the approval of the adjacent property owner submitted in writing with the application for a fence permit, and in no event shall a fence extend beyond a property line."[1]

Around the same time, defendants also requested approval from the Association's Architectural Control Committee (Committee) to "add [a] fence to [the] back and sides of [the] [P]roperty to protect dogs and prepare for pool installation." Defendants' application to the Committee attached the Township's zoning permit and included a survey of the Property, "showing where the fence would be located." The survey depicted a bold line reflecting the side yard location of the fence "[four] inches from property line." The survey also indicated, by way of a bold line, the rear yard fence location at ten feet from the property line. According to the survey, defendants' house sat 50.4 feet and 39.6 feet from the Property's side yard lines and between 84.5 feet and 96.9 feet from the Property's rear yard line.

On November 15, 2022, the Committee approved defendants' installation of a fence. The Committee's approval indicated the "[Declaration] and Design

---

[1] The Township adopted the fence ordinance in 1982, more than a quarter-century before the Association recorded the Declaration.

Guidelines stipulations apply, as do those of the local municipality." Two weeks later, defendants installed the fence.

On February 2, 2023, the Association notified defendants the fence violated the Declaration. Defendants contested the violation notice. Defendants asserted they "checked the plans that were submitted and approved by the [Association] prior to the fence installation and nothing in the installation differ[ed] from what was approved by the [Association]."

In March 2023, the Association sought to amend the Declaration, which required approval from sixty-seven percent of the Estate's homeowners. Among the proposed amendments, the Association sought to change the requirements for installation of fences. Specifically, the Association proposed the following amendment to Section 8.1(c) of the Declaration: "All fences must be set back at least ten (10) feet from the property line and/or any easement." The Estate's homeowners rejected the proposed amendments to the Declaration.

In September 2023, the Association filed a verified complaint against defendants seeking a declaratory judgment and injunctive relief. The Association requested the court determine Section 8.1(dd) of the Declaration governed the installation of fences within the Estates. Additionally, the

Association sought injunctive relief requiring defendants to remove the fence because it was located within a prohibited thirty-foot setback.

Defendants filed an answer and counterclaim. In their counterclaim, defendants asked the court to rule Section 8.1(c) of the Declaration governed fences. They further asserted that because Section 8.1(c) is "silent with regard to setbacks," the Declaration "defers to [the Township's] ordinance with regard to setbacks of fences."

At a case management conference, the parties agreed there were no materially disputed facts and the matter should be resolved on motions for summary judgment. In its motion for summary judgment, the Association argued: fences were structures or improvements under Section 8.1(dd) of the Declaration and required a thirty-foot setback; the definitional section of the Township's ordinance defines a fence as a structure; and "[a] fence is commonly known as an exterior improvement." Further, because defendants "buil[t] their fence closer to the property line than the [thirty-foot] minimum setback," the Association asserted defendants violated the Declaration.

In their summary judgment motion, defendants asserted Section 8.1(c) of the Declaration governed fences. Defendants' counsel argued the Declaration refers to the Township's ordinance governing fences and provides a fence must

6

be set back four inches from the property line. He further asserted a thirty-foot setback requirement made "sense for additions and sheds and shacks . . . but not for fences."

The Association's attorney acknowledged Section 8.1(dd) did not use the term fence. However, he claimed the Association purposely "used over broad language" regarding exterior improvements in Section 81(dd) and a fence constituted an exterior improvement.

The judge explained the issue was "whether or not the[] covenant in Section 8.1(c) is applicable or whether it's 8.1(dd) that's applicable. It really has to do with the setback requirement of the fence itself." The judge stated the case involved "a simple matter of interpretation of the by-laws. The fact of the matter is that . . . a clear, unambiguous reading of these bylaws reveals that Section 8.1(c) pertains to fences. Section 8.1(dd) pertains to other structures." The judge concluded that if the Declaration intended a thirty-foot minimum setback to apply to fences "it should have been all in one paragraph together. It shouldn't be Section 8.1(c) that deals only with fences and 8.1(dd), which involves structures and sheds."

The judge rejected the Association's argument that a fence is an "exterior improvement" under Section 8.1(dd). He stated:

> I don't know if you can say that a fence is an exterior improvement or not, whether temporary or permanent. [Section](dd) was meant for the wood shacks, the metal shacks, a porch that's kind of permanent in nature. It's a structure. It's not a fence.
>
> Nobody can interpret this language, building, shed, shack, porch, or a similar type of structure as including the fence when fences are directly addressed under a prior section.
>
> And referring to the zoning ordinance, I believe that fences are governed under 8.1(c).

The judge also explained why imposing a thirty-foot setback for fences defied logic. He stated:

> I don't know the size of the lots over there, but unless you've got a couple acres, [thirty] feet back off your property line is a pretty significant distance.
>
> Frankly, it wouldn't be very aesthetically pleasing if you look at it that way, which is what these Association rules are meant to provide.
>
> [A] [thirty]-foot setback requirement for a fence is just . . . unheard of.

After concluding there were no issues of material fact, the judge found Section 8.1(c) of the Declaration to be "the controlling paragraph for fences, which . . . is, in and of itself silent with regard to setbacks." He also determined "Section 8.1(c) defers to local ordinance with regard to setbacks for fences . . . and that [d]efendants' fence is not in violation of said ordinance."

8

The Association appealed the denial of its motion for summary judgment and the entry of summary judgment in favor of defendants. On appeal, the Association argues the judge erred in finding Section 8.1(dd) of the Declaration did not apply to fences. The Association further asserts the judge incorrectly determined Section 8.1(c) of the Declaration deferred to the Township's ordinance for fence setback requirements. We reject the Association's arguments.

We review a trial court's decision on a motion for summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "The court's function is not 'to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We first consider the Association's claim the judge erred in finding Section 8.1(dd) of the Declaration inapplicable to fences. The Association argues the judge disregarded the plain language of the Declaration and failed to consider the document as a whole. The Association contends the judge read Section 8.1(c) in isolation and failed to consider the broader context of the remaining provisions in the Declaration, specifically Section 8.1(dd).

A restrictive covenant is a contract subject to general rules of contract construction. Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003) (stating enforcement of a restrictive covenant "constitutes a contract right" and "must be analyzed in accordance with the principles of contact interpretation"). When interpreting a contract, the court looks to the intent of the parties as evidenced by the contract language. Homann v.

<u>Torchinsky</u>, 296 N.J. Super. 326, 334 (App. Div. 1997). "The plain language of the contract is the cornerstone of the interpretive inquiry." <u>Barila v. Bd. of Educ. of Cliffside Park</u>, 241 N.J. 595, 616 (2020). In considering the express contractual language, courts must "read the document as a whole in a fair and common[-]sense manner." <u>Hardy ex rel. Dowdell v. Abdul-Matin</u>, 198 N.J. 95, 103 (2009).

Restrictions on property are enforceable if they are set forth clearly in a restrictive covenant, reasonable, and part of the chain of title. <u>See</u> <u>Cape May Harbor Vill. & Yacht Club Ass'n, Inc. v. Sbraga</u>, 421 N.J. Super. 56, 71 (App. Div. 2011). "Restrictive covenants are strictly construed, and any ambiguities must be resolved in favor of the homeowners' unrestricted use of their property." <u>Steiger v. Lenoci</u>, 352 N.J. Super. 90, 95 (App. Div. 2002) (citing <u>Homann</u>, 296 N.J. Super. at 335). "Generally, in the context of restrictive covenants, a rule of strict construction should be applied to the provisions, unless such a rule would defeat the obvious purpose of the restrictions." <u>Homann</u>, 296 N.J. Super. at 335 (citing <u>Murphy v. Trapani</u>, 255 N.J. Super. 65, 72 (App. Div. 1992)).

The parties agree the provisions at issue here are restrictive covenants. Section 8.1(c) of the Declaration sets forth restrictions on the placement, height, material, and style of fences. This section expressly applies to any "fence, wall,

hedge, mass planting or similar continuous structure." Section 8.1(c) is silent as to setback requirements. Further, this section requires a fence be approved by the Committee and "not be in conflict with any municipal ordinance(s)."

Section 8.1(dd), appearing twenty-seven paragraphs after Section 8.1(c), identifies setback requirements applicable to any "accessory building, shed, shack, porch, or other similar type of structure or exterior improvement." Nowhere in Section 8.1(dd) does the word "fence" appear.

Based on our review of the record, we are satisfied the judge considered Section 8.1(c) in the context of the Declaration as a whole, including the interplay of that section with Section 8.1(dd). Reading the Declaration in its entirety, it is clear Section 8.1(c) and not Section 8.1(dd) applies to the installation of fences.

We decline to interpret the Declaration as suggested by the Association. The Association seeks to read in the word "fence" under Section 8.1(dd), which governs "exterior improvement[s]." However, the word "fence" appears only in Sections 8.1(c) and 8.1(z) of the Declaration.[2] In Section 8.1(c), the word

---

[2] Section 8.1(z) restricts the obstruction of sight lines on corner lots in the Estates. Because the Property is not a corner lot, Section 8.1(z) does not apply.

A-3123-23

"fence" is used seven times.  The word "fence" is never mentioned in Section 8.1(dd).

The mention of fences in Section 8.1(c) and exclusion of fences in 8.1(dd) implies the omission was intentional.  See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004) (explaining the doctrine of "expression unius est exclusio alterius"—the expression of one thing suggests the exclusion of another left unmentioned).  Because restrictions on "fences" are stated unequivocally in Section 8.1(c) of the Declaration, the Association could and should have included fences in Section 8.1(dd) if it so intended.  See Steiger, 352 N.J. Super. at 96 (declining to read a restriction into a deed "in the absence of an express indication in the restrictive covenant").

Further, since the Township's ordinance governing fences was enacted twenty-six years before the Association recorded the Declaration, the Declaration's drafters should have been aware of the Township's four-inch setback requirement for fences.  If the Declaration's drafters intended to create a setback greater than required under the Township's fence ordinance, the drafters should have explicitly and clearly so stated.  See Cooper River Plaza E., LLC, 359 N.J. Super. at 526 ("[C]ourts will not aid one person to restrict another

13

in the use of his land unless the right to restrict is made manifest and clear in the restrictive covenant.").

Additionally, we note the Committee approved defendants' request to erect a fence on the Property. Defendants' fence application specifically included a survey depicting the exact location of the fence and a written notation indicating the fence would be constructed "[four] inches from [the] [P]roperty line." The Committee never advised that defendants' fence application, proposing a four-inch setback per the attached survey, violated the Declaration.

The plain language of the Declaration, read in its entirety, supported the judge's concluding that Section 8.1(c), and not Section 8.1(dd), governed fences. Because defendants' fence complied with the Township's fence ordinance consistent with Section 8.1(c), the judge correctly concluded they were entitled to summary judgment.

We next consider the Association's argument that the judge's decision was improper because it was based on the judge's personal opinion that the Association's setbacks were not "aesthetically pleasing" and differed from setbacks in other communities. The Association contends there is no support in the record for these statements by the judge.

"A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." Rahway Hosp. v. Horizon Blue Cross Blue Shield of N.J., 374 N.J. Super. 101, 111 (App. Div. 2005) (quoting E. Brunswick Sewerage Auth. v. E. Mill Assocs., 365 N.J. Super. 120, 125 (App. Div. 2004)). "Where the terms of an agreement are clear, [courts] ordinarily will not make a better contract for parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either." Ibid. (quoting Carroll v. United Airlines, Inc., 325 N.J. Super. 353, 358-59 (App. Div. 1999)). A court will not "supply terms that have not been agreed upon." Ibid. (quoting Bar on the Pier, Inc. v. Bassinder, 358 N.J. Super. 473, 480 (App. Div. 2003)).

Here, the judge did not rewrite the Declaration. Rather, he opined he "never heard of any association having a [thirty]-foot setback requirement from a property line for a fence." He further explained that absent a property owner having "a couple acres" of land, "[thirty] feet back off your property line [wa]s a pretty significant distance." Based on the half-acre size of the Property, as delineated in the survey included in the record on appeal, the judge stated a thirty-foot setback requirement significantly reduced the size of defendants'

usable yard area. Consequently, he determined Section 8.1(c) of the Declaration rather than 8.1(dd) addressed fence restrictions.

We are satisfied the judge did not base his ruling on his personal beliefs. Rather, the judge thoroughly analyzed the plain and unequivocal language of the Declaration and correctly concluded Section 8.1(c) rather than Section 8.1(dd) governed fences and defendants' fence complied with Section 8.1(c) of the Declaration.

To the extent we have not addressed any of the Association's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3123-23